We have six cases on our calendar this morning, indicating the breadth of our work and the breadth of the locations from which our cases come. We have two patent cases, one from a case from the Court of International Trade, a trademark case from the PTO, and two government employee cases, which are being submitted on the briefs and will therefore not be argued. Our first case is the Lincoln Electric v. ITC and ISAR and Cytogas, if that's the proper term, and Mr. Whitberg. Good morning and may it please the Court. In adopting the ALJ's finding of non-infringement, the Commission made a number of errors as laid out in our brief. My intention today is only to discuss two of those errors, and as to the remainder, unless there are no questions, we will rest on the briefs for those issues. The first issue I want to discuss is the Commission's adoption of the ALJ's finding that the accused product must be wound on a physical device to infringe the asserted claims. In the briefs, there were considerable discussion of the relevant case law on this topic, and not surprisingly, there was some disagreement as to the applicability of that case law. However, two very important things can't be disputed. The first is the fact that a word appears in the preamble and then is repeated in the body of a claim does not, as a matter of law, create a structural limitation for the claim. It certainly tells you to focus on it, though. I'm sorry? It certainly tells you to focus on it. It certainly tells you to pay attention. We're talking about a spool. Yes, that's correct. An analysis must be done. That's what the case law tells us. And the second point that cannot be disputed is that that analysis must focus on the intrinsic record and the intrinsic record alone. That intrinsic record comprises the patent, the prosecution history, and, of course, the claim language itself. And a fair reading of the entire record shows that the ALJ committed error in transforming the claims at issue from a claim to Weldwire to claims to an assembly of Weldwire and their package. If we first look at the specification of the patent, what is it talking about? And using the teachings of the case law, we look at the specification. What is the invention about? The invention is about consistent Weldwire. What was the problem in the prior art? The problem was Weldwire not having a predisposition or an imparted shape memory could be affected by the package and any subsequent stresses on the wire from the package as it's delivered to the weldman. This can cause a problem in reshaping the wire. The problems identified with respect to the prior art were agnostic to the type of packaging as clearly laid forth in the background of the invention. Then we turn to the summary of the invention. Similarly, the invention, the solution to impart shape memory in a Weldwire so that the wire would resist these additional forces that the wire would see as it's delivered to the weldman. Where is the disclosure which is broader than the spool? There isn't much. Yes, Your Honor. The disclosure that the invention is broader than the spool can be found, and as we cited in our papers throughout the background, and specifically the summary of the invention. The present invention, I'm reading at column 2, line 25, the present invention pertains to an improved Weldwire and a process for making improved Weldwire for use in the various types of welding machines. There's no mention of the type of packaging. Of course, it goes on to say that the improved Weldwire in accordance with the present invention involves the utilization of Weldwire that has a shape memory imparted on the Weldwire prior to and or at the time of the wires being wound on a real spool container or the like. It strikes me that it is established that there was a particular problem with wire that was wound on a spool because of the shape that was imparted as a result of that process. No? You're referring to a problem associated with the varying diameters because of winding a wire around a cylinder? Yes. That is nowhere in the intrinsic record, Your Honor. If we are to look at the intrinsic record to inform us as to what the claims mean, that problem is nowhere identified here. It was briefed extensively by the commission and the interveners and relying on the extrinsic testimony of one of the inventors, Otto Ferguson, but if we look carefully at that testimony as we cite in our reply, Otto Ferguson did not concede that that necessarily causes a problem. As a matter of fact, as quoted in our reply, he says not necessarily. There are other things. Maybe it doesn't necessarily cause a problem, but that was the fact that it does often cause a problem is what this invention is directed to. There's no dispute, I agree, that it can be a problem, but the patent makes it very clear that that is not the sole solution that this patent is trying to solve. Well, where does it make that clear? Because you're relying on the fact that it says a spool, a container, or the like, or whatever the language is? Yes. And if we just turn then to the background, primarily in column one of the patent, it says when reading at approximately line 38, it's common, or 35 actually, it's common industry practice to feed a killed wire into a welder during the welding process. Killed wire has its shape memory removed and then it goes on starting at around 39 when the weld wire is wound on a reel, spool, container, or the like. So it is expressly stating- winding the wire on some sort of physical object rather than just being wound around itself. Well, I don't agree that this disclosure says it is wound around something. What it is telling us is that the packaging, which is a series of loops, I mean, we're dealing with bulk packaging that can range 500 to 1,000 pounds. The only way to reasonably ship it and utilize it is packaging it in a series of loops. The creation of those loops, as the loops are in the package or on the package, reshapes the wire. You're now taking something that was arguably straight and putting it into a circular form. But then the patent goes on to say, starting at around 52 in the same column one, since the weld wire has no shape memory, the weld wire constantly modifies its shape as it passes through the weld gun. So this patent talks more than just packaging. The entire process of doing- Wait, but line 38 says, when the weld wire is wound on the reel spool. It seems to be talking about a situation in which the weld wire is wound on to something else rather than deposited in the container. That seems to be your problem. You're focusing on the language, wound on, in the specification. Right. Yes, Your Honor. Well, I do not agree that that language, with the knowledge of what was known in the art, that various types of packaging existed, that it requires being wound on anything. So this is not a description of the invention? It is. Well, this is a description of the problems of the prior art in that particular passage, although I do concede that similar language is used in the summary of the invention. In the description of being wound on, with respect to the- The patent is informing that it is the packaging that can be part of the problem, and therefore this imparted shape memory of the weld wire that is the issue of this invention, at least some of it must be prior to that wire being deposited or wound onto or into its packaging. Well, someone here, the inventor or the attorney representing the inventor, wanted to broaden the description beyond spool, because, as I recall it, there was a provisional application and then a full utility application which added material, real, container of the like. Correct. The problem was, there is no further description of that, and the claims weren't broadened. Well, the presence of the spool language in the claim is actually consistent with the specification. I mean, we certainly do not agree- That's exactly right. The specification throughout deals with the spool. Well, the exemplary embodiment is consistent with that representation, but at the very end of the discussion of the exemplary embodiment in column 10, the invention has been described with reference to the preferred embodiment, these and other modifications of the preferred embodiment. Well, you know that's boiler-plated in every patent application. It doesn't constitute a description of anything. Agreed, agreed, but it is also consistent with the law, where you have a set of claims which are broader than the description. You do not, as a matter of law, incorporate the only disclosed exemplary embodiment. Except the claims aren't broad. The claims refer to spool, which is quite specific, and as you say, consistent with the specification. Yes, but if we focus at the language of the claim, at no point does the language of the claim actually say that the wire and the spool are joined in some sort of physical relationship. If we focus merely on the preamble, I'm focusing only on claim 3. A weld wire having a desired and parted shape memory for storage on a spool of weld wire. That's arguably a non-limiting preamble. Arguably, but then the argument weakens when twice in the further body of the claim it refers to said spool, which pretty much makes the preamble a limitation. Well, I believe that the language of this claim tracks the decisions in VOPL and C.R. Baird, where we don't dispute that the language prior to said weld wire being wound is a limitation of the claim. It is there, but it is consistent with the specification teaching us that the shape memory we're dealing with, in the waveform shape, is shape memory not coming from the packaging. And so that language doesn't say that the shape memory is partially imparted prior to the wire being wound on said spool, and then being wound on said spool. But then it says it's partially retained after it's unwound. It certainly sounds as though there's a spool involved there. Your Honor, that language does not appear in claim 3. So in claims 6 and 12, that language appears. And although we disagree that it still requires the physical spool to be present, it's consistent with the specification in saying the point of the invention is the presence of imparted shape memory, not being influenced by the package. And that's why at least some of it must be imparted prior, and some of it must be imparted or must remain after. Only in claims 6 and 12, that limitation doesn't appear. Claim 3 may not say unwound, but it does say that it's wound on said spool. The language seems to be pretty clear. You're talking about a wire that's wound, and then it goes on and describes what it's wound on, it's spool. Well, read carefully. I think the language doesn't suggest that. The language says it is weld wire for storage on a spool. There's no statement there that it is actually stored on a spool, much like the language in some of the cases we cited. Do you want to save a few minutes for rebuttal? I do, but I have another point I want to address, but obviously this is the important one. And then the language with respect to the partial shape memory, granted the words on said spool exist, but that's being taken out of context. The imparted shape memory is being imparted prior to being wound on a spool. If, as everyone concedes, there is no physical object in the accused product, and as no one argues otherwise, the imparted shape memory exists in the wire. The waveform shape was found. It necessarily follows that it has shape memory prior to being wound on any physical object. Now, my second point I want to address is the bifurcated construction of the prior-to language. We don't disagree with the ALJ's construction of that language as set forth in his claim construction portion of his ID, nor the application of that construction vis-à-vis Lincoln's domestic industry product. Some imparted shape memory must be imparted prior to the wire leaving the winding machine. His error is bifurcating that construction and saying, well, for this type of packaging, the winding process begins somewhere else. That's error for a number of ways. Number one, there is no basis in law or the record to construe wounds  Secondly, it was error to say or rely on an alleged difference between the processes. What that does is turns this claim into a method claim, which it is not. It also is not in accord with the evidence. Lincoln's process used a lamniabrook winding machine. It has a laying head, a guide tube, a cap stand. The accused product for Aesop uses a lamniabrook machine. For cider gas, it's a similar type machine. It uses a laying head, cap stand, a guide tube. There is no material difference relative to this wound construction as the ALJ stated. Furthermore, the ALJ's conclusion is directly contradicted by intervenors' representation of their own winding process. If you look at page 14 and 15 of their brief, they describe their winding process and they say the winding process occurs from the whip reel, through the festoons, dancing rollers, all the way down into the laying head. We are in complete agreement with that. So there is no substantial evidence to support the beginning of winding after the cap stand. The intervenors don't agree with that as set forth in their paper and we don't agree with it. Moreover, it's an erroneous claim to the structure not based on the record. Thank you, Your Honor. Well, you've used all of your time. I did. That's your choice, but perhaps we'll give you one minute for a quick rebuttal, if you wish. Ms. Chen for the commission. And you're splitting your time and you're going to take eight minutes. Okay. And leave seven for the intervenor. May it please the Court. Good morning, Your Honors. The commission correctly construed the term for the limitation because one, every term in the body of a claim is presumed to have meaning and two, doing so is consistent with the intrinsic record. First, the body of each of the asserted claims we cite wound on said spool. Claims 6 and 12 additionally recite unwound from said spool. What about the argument that it's just a non-limiting preamble? Well, even if we're going to not look at the language in the preamble, the body of the claim required that the wildwire be or have been wound on a spool. And to construe spool as intended use would be to render express structural terms in the body of the claim superfluous. And if a spool is never required to meet the limitation in the body prior to said wildwire being wound on said spool, then the claims could have easily just recited prior to said wildwire being wound and ended there. The fact is the claims recite wound on said spool. It gave notice to the public that the claim dimension is drawn to wires that are wound on a spool. What about the further disclosure and the specification that goes beyond a spool? Your Honor, the specification and the prosecution history is completely consistent with what's claimed in the claim language of requirement of a spool. Starting with the provisional, all the drawings and the written description discuss only the problems and solutions of a wildwire wound on a spool. The utility application, with the exception of the word containers, throw into only the introductory sections. The remainder of the written description and all of the drawings focus on the problem and solutions of wildwires wound on a spool. It's well settled that when there's, to the extent that there's multiple embodiments discussed in the specification and the claim language recite only one of those embodiments, then the claim dimension is dedicated to that one embodiment. In other words, the multiple embodiments and the spec are not in support of a generic term in the claim, but just is only one of the several specific terms in the claim. One of the specific species in the claim. That's correct, Your Honor. And if we're looking through the prosecution history, the entire time, even through several amendments, the claims always recited wound on said spool, and no time was the limitation disclaimed from the claims. What about the shape memory, the partially imparted shape memory? Well, the spool is actually a necessary element for defining the shape memory. So, for example, if we're looking at Claims 6 and 12, the claims require that the shape memory be retained after it's unwound from said spool. So a fact finder would not be able to assess whether that shape memory has been retained unless it's been unwound from said spool. And as for Claim 3, the recitation of shape memory under the ALJ's construction, which is at JA56 of the ID, actually has its own shape memory retention requirements. So it has to be wound on a spool and then un-tensioned from the spool in order to test that shape memory. And Claim 3 does not say prior to said wild wire being wound. It additionally recites wound on said spool. Claim 3 seems to suggest that the imparted shape memory exists prior to it being wound on a spool. And it also requires that it be wound on said spool. If something that's never wound on a spool or something that's never wound could meet Claim 3, then we would be writing down the entire prior to said being wound limitation. So this just goes to show that if we were to take out an express term, that the whole entire, then we would be taking out the prior to said wild wire being wound limitation, and that would be a slippery slope. Because if we're going to take out certain claims just from the body of the claim, where would we stop? The claims say wound on said spool. It has to have a spool at some point. Something that's never wound on a spool cannot meet the asserted claims. And the public, looking at the intrinsic record, is on notice that the claimed indenture pertains to wild wire on a spool. Lincoln should not be allowed to rewrite the claims to broaden it now, after it chose to claim wild wire wound on said spool. I see that I have some time left. Can I answer any additional questions from the court? I'd like to make a comment to all counsel that all the briefs are marked confidential. All the appendices are marked confidential. And I know we have to go through there and find the specific portions of the pages that are confidential information, but it makes it awfully hard to prepare for oral argument and to ask questions and to be engaged if a lot of the information has been marked confidential. And our court grants oral argument to whoever asked for it. It just makes it difficult. So I caution all the parties and counsel and any lawyers that are here to be very circumspect when it comes to marking your material as confidential. Sorry I took up some of your time in doing that. Well it sounds like Ms. Chen was about to conclude. Right. As for the accused products, they're never wound on a spool, never intended to be wound on a spool, so they cannot meet the limitation wound on said spool in each of the asserted claims. We respectfully request that the commission's determination of no violation be affirmed. No one is ever penalized by not using all of their time. Mr. Arroyo, for the intervenants. And I trust you will not simply repeat some arguments. No, Your Honor. May it please the court. Velasco Arroyo of Austin and Burr on behalf of the respondents, intervenors, ESOP group, and Cider Gans. Your Honor, I primarily wanted to address the issues of infringement. As the Office of General Counsel pointed out, the accused products are not wound on spools and have not been wound on spools and not packaged on spools for ultimate sale for use. So that the issue of literal infringement is straightforward based on the claim construction. Once the claims are properly construed, there is no infringement. I wanted to additionally address issues of alleged infringement and other doctrinal equivalents. Likewise, as there is no infringement under the literal wording of the claims as properly construed, the issue of construction similarly resolves the issues of infringement of the doctrinal equivalents in this case. The same parts of the specification that Lincoln attempts to use in order to attempt to broaden the scope of the claims by referring to containers in the specification, for example, but then having claims that are only directed to wire wound on spools implicates the Disclosure Dedication Doctrine, which is well settled under the precedence of this court, I guess the leading case being Maxwell v. Baker that's generally cited, but additionally the Johnson & Johnson v. RE Service case. So that issue alone is dispositive of any claim of alleged infringement of the doctrinal equivalents. In addition to that, however, the court also found that in this case, wire wound on spools versus wire that were wound into containers, were accused or laid into containers, were recognized to be distinct packaging methods, which also demonstrates that the differences between these products are not insubstantial. For example, Aesop's expert testified that wire wound around spools, as the panel observed, involves a situation whereby winding around a physical core, the wire wound near the center of the core, adjacent to that core, is going to be in part of a specific shape of a relatively lesser diameter. As the package is built up and additional wire is wound around, the wire near the outside of that package will have still a distinct shape relative to the inside. As distinguished from that, the wire laid into the containers, as applied by the laying head, is wire deposited and formed in a shape that is of uniform diameter. So, as a result, the record demonstrates that there was no wire weld problem associated with the wire packaged in the drums. Your Honor is absolutely correct. Why can't you make a container and like you put a hose, winding it around and just place it in the container without a spool? I'm sorry, Your Honor? Without a spool. Just wind it around. That's right. There is no spool whatsoever. And the distinct packaging methodology of laying the wire is a distinct method known since the late 80s and respondents, Esau, for example, was practicing this technology in the early 90s. The evidence consistently shows that that wire, in contrast to the wire wound around spools, did not have the wire consistency, weld consistency problem. The authorities or the record sites made by Lincoln in its briefs are suggesting there might be such an issue. If you refer to those actual factual parts of the record, there is actually no support. The record illustrates that there are no weld wire problems. That was the testimony of the inventors as well. Prior to placing the wire in the container, does it then already have a spooled shape? The shape comes from the physical effect. In the laying process as practiced by the interveners and as found by the ALJ, the wire is fed down through an inlet guide and it's a sinuous-shaped guide tube that goes through what is basically a drum-shaped laying head. And the machine is depicted and hopefully described sufficiently at page 15 in that section of our brief. By virtue of the wire feeding through and the rotation of the laying head inside the drum What shape is the wire when it goes into a container? It's straight. As the wire goes into the container, it is being wound, so it has an arcuate shape. As it is going into the container, it will have an arcuate shape. It's being laid into an arcuate shape. Prior to going into the container, is it straight or does it already have a shape memory? It is straight as it is fed into the guide tube to be fed down into the drum. As it goes through that drum, it will acquire a shape, a resulting shape when it's taken out of the drum. But unlike wire wound around a spool, the wire packaged into drums all has the consistent size. All loops are the same size as distinguished from wire wound around spools. In this case, again, disclosure, dedication, the art recognized distinction between these products are all bases that point under multiple grounds to no infringement of the doctrine of equivalence. In addition to that, the ALJ in this case took the further step of saying that if you were to try to apply these claims to the methods, to the products actually made by the interveners, there also was not infringement on the basis that the shape memory was not applied at least partially prior to the wire being wound into the package. Now, Lincoln faults the ALJ's analysis on that alternative ground ostensibly on the basis that the ALJ, well, let me say it another way. The fact of the matter is the record demonstrates that the wire is fed into the lane head comes from straightening rolls. The patent makes a clear distinction, distinguishes the alleged invention from wire that has been so-called killed. And the experts for Lincoln testified that a killed wire within the reaming of the specification is wire in the case of drumming that is fed straight, a straightened wire from the straightening rolls. It's difficult to see that killed wire could have the type of shape that these patent claims are talking about, but what about the argument that the lane head itself has certain parts of shape to it and that that is occurring before it's wound on the spool? Well, in this situation, Lincoln criticizes the judge for the fact that, well, the fact of the matter is that Lincoln's own experts testified that wire fed from straightening rolls to the cap stand of a drumming machine of the type used by the accusers is the same thing as what the patent describes as the killed wire of the prior art. So as a result... You're not understanding me. I'm saying that their alternative argument is that the lane head imparts a shape to the wire and that that happens before being wound on the spool. That's correct, Your Honor, but that shape would not be prior to winding on a spool. Number one, because there is no spool on which wire is wound. Wire is packaged into drums as an alternative. But the point is that Lincoln's own experts testified that shape imparted by a lane head in a drumming operation was not the shape that the claims of the patent were intended to apply to because that shape was inherently applied by the drumming machines in this distinct packaging operation in the prior art as well. So we're trying to make a distinction and both testified that in order to produce a product of the claim type as applied to a drumming operation, you had to apply a shape before the capstan, a curvilinear shape. There is no such device. There is no such apparatus in the accused processes. And the ALJ specifically found that the wire was straight in the accused systems. And that finding is supported by far more than substantial evidence on this record. There was no contradictory evidence. That wire is straight. Thank you, Mr. Royal. Your time has expired and let's check back for further questions. Thank you, Your Honor. Mr. Whitberg chose to use all his time, but if you have one quick point in rebuttal, we'll hear it. Thank you, Your Honor. I'm going to respond to a few points we've heard from commissioners and the intervenors. That's not one quick point, but I'll give you a minute. I'll rapid fire. The evidence clearly shows the wire has shape before it's wound in its package. Dr. Brown, intervenor, ESOB's expert, testified at JA-6726-28 in answering the ALJ's questions. At least some of the shape, some of the twist, which gives us the waveform transitioning from one arc to the other, and some of the cath is coming from the winding machine. Now, he testified that that's in the laying head, but that's the winding. Second point. Second point. We are not saying that the language in the body of the claim should be ignored. It is a temporal limitation consistent with the patent, and that is some of the shape memory must be from something else than the package. If the shape memory from the package was bad, we need to give it the chance to resist those forces. We impart some before its packaging. Third point. The prosecution history, the public was unnoticed. The examiner clearly indicated that the language is not a limitation. Thank you, Your Honor. Thank you, Mr. Whitberg. The case will be taken under advisement.